IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Case No. 06-10401-JKF |
| | ) | |
| ABB LUMMUS GLOBAL INC., | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | Dkt. No.: __251__ |

### ~~PROPOSED~~ FINDINGS OF FACT AND CONCLUSIONS OF LAW REGARDING CONFIRMATION OF DEBTOR'S PREPACKAGED PLAN OF REORGANIZATION AS MODIFIED THROUGH JUNE 8, 2006

This matter comes before this Court upon the request of ABB Lummus Global Inc., debtor and debtor-in-possession (the "Debtor" or "Lummus"), for an order confirming the Debtor's Prepackaged Plan of Reorganization, dated August 30, 2005, as amended by the Technical Modifications (as such term is defined in paragraph 7 below) filed of record on June 8, 2006 (hereinafter, the "Plan").[1]

This Court has reviewed the brief in support of the Plan, together with the supporting materials filed by all interested parties, and has considered the oral arguments of all interested counsel and the testimony of witnesses and other evidence admitted at the Confirmation Hearing held on June 21, 2006. This Court takes judicial notice that no objections or briefs in opposition to the confirmation of the Plan were filed.

---

[1] Capitalized terms used herein without definition shall have the meanings ascribed to such terms in the Glossary of Terms for Plan Documents, filed of record on June 8, 2006 (Dkt. No. 216) (the "Glossary"). Any capitalized term used but not defined herein or in the Glossary, but that is defined in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning ascribed to such term in the Bankruptcy Code or the Bankruptcy Rules. Such meanings shall be equally applicable to both the singular and the plural forms of such terms.

This Court also has reviewed the affidavit of mailing dated May 1, 2006, with respect to the service of the Notice of Confirmation Hearing,[2] and the affidavits of publication dated June 5, 2006, confirming the publication of notice of the Confirmation Hearing in The Wall Street Journal (National Edition), The Newark Star-Ledger, and The Houston Chronicle on May 4, 2006,[3] in accordance with the Order (I) Scheduling a Combined Hearing on Approval of the Disclosure Statement and Solicitation Procedures, and to Consider Confirmation of the Plan of Reorganization, (II) Establishing Deadlines and Procedures for Filing Objections to the Adequacy of the Disclosure Statement and Solicitation Procedures for Confirmation of the Plan, and (III) Approving Form and Manner of Notice of Confirmation Hearing (the "Scheduling Order").[4] This Court concludes that good and sufficient notice of the Confirmation Hearing was given to all parties in interest.

This Court admitted into evidence the affidavits filed in support of the confirmation of the Plan as if the makers thereof gave live testimony and, to the extent that such affidavits contain expert testimony, this Court hereby finds that the signatories to such affidavits are qualified as expert witnesses. This Court accepts their testimony and opinions as expert testimony and opinions under the Federal Rules of Evidence, and the expert affidavits are admitted as such.[5]

---

[2] Dkt. No. 115, Hrg. Ex. 22 (each Hrg. Ex. referenced herein refers to the Debtor's Exhibit List for Hearing on Approval of Disclosure Statement and Solicitation Procedures and Confirmation of Prepackaged Plan of Reorganization filed of record on June 14, 2006).

[3] Dkt. Nos. 209, 210, and 211, Hrg. Exs. 27, 28, and 29.

[4] Dkt. No. 64, Hrg. Ex. 18.

[5] The affidavits of John Brett ("Brett Aff."), Pamela D. Zilly ("Zilly Aff."), Cassandra Murray ("Murray Aff."), Richard B. Schiro ("Schiro Aff."), Dr. Francine F. Rabinovitz ("Rabinovitz Aff."), Michael Ford ("Ford Aff."), Margaret Duplantier ("Duplantier Aff."), and John Dickhoff ("Dickhoff Aff.") were admitted into evidence at the Confirmation Hearing as live testimony in support of the confirmation of the Plan. (See Brett Aff. Dkt. No. 196, Hrg. Ex. 5; Zilly Aff. Dkt. No. 197, Hrg. Ex. 6; Murray Aff. Dkt. No. 198, Hrg. Ex. 7; Schiro Aff. Dkt. No. 199, Hrg. Ex. 8; Rabinovitz Aff. Dkt. No. 200, Hrg. Ex. 9; Ford Aff. Dkt. No. 201, Hrg. Ex. 10; Duplantier Aff. Dkt. No. 202, Hrg. Ex. 4; Dickhoff Aff. 203, Hrg. Ex. 11).

After due deliberation and sufficient cause appearing therefor, this Court hereby makes the following findings of fact and conclusions of law (the "Findings and Conclusions").[6]

## PRELIMINARY FINDINGS AND CONCLUSIONS

A. **Jurisdiction and Venue**

1.      This Court has jurisdiction to conduct the Confirmation Hearing and to confirm the Plan pursuant to 28 U.S.C. §§ 157 and 1334.  Plan confirmation is a core proceeding pursuant to 28 U.S.C. § 157(b) and this Court has jurisdiction to enter an order with respect thereto.  Certain aspects regarding entry of a section 524(g) injunction, however, require the approval of the District Court.

2.      In connection with the Confirmation Hearing, this Court maintains core jurisdiction under 28 U.S.C. § 157(b)(2)(B), (L), and (O), 11 U.S.C. § 502(c), and Bankruptcy Rule 3018(a) to estimate the value of certain claims for purposes of voting, confirm the Plan, and enter the Lummus Asbestos PI Channeling Injunction and the Lummus Asbestos Insurance Entity Injunction contemplated by the Plan.  Because of the unique nature of the difficulty of ascertaining on an issue by issue basis whether the Bankruptcy Court's jurisdiction is core or non-core, the Bankruptcy Court will recommend to the District Court entry of a final order confirming the Plan.

3.      The Debtor was and is qualified to be a debtor under section 109(a) of the Bankruptcy Code and the Debtor is a proper proponent of the Plan under section 1121(a) of the Bankruptcy Code.

4.      Lummus is a corporation organized and existing under the laws of the State of Delaware with its principal places of business in Bloomfield, New Jersey and Houston, Texas.[7]

---

[6] These Findings and Conclusions constitute this Court's findings of fact and conclusions of law under Rule 52 of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rules 7052 and 9014.  Any finding of fact shall constitute a finding of fact even if it is stated as a conclusion of law and any conclusion of law shall constitute a conclusion of law even if it is stated as a finding of fact.

3

The Debtor is an affiliate of Combustion Engineering, Inc. ("CE") and the CE Bankruptcy Case is pending before this Court.[8]  Accordingly, venue in Delaware was proper as of the Petition Date pursuant to 28 U.S.C. § 1408(1) and (2) and continues to be proper.

5.    Each of the conditions precedent to confirmation of the Plan and entry of the Confirmation Order have been satisfied or waived in accordance with section 7.9 of the Plan.

**B.    Review of the Chapter 11 Case Record**

6.    This Court has considered the proceedings in the Chapter 11 Case, including, but not limited to, the review of all of the filings, orders, and evidence entered in those proceedings. This Court has also considered the relevant proceedings in the CE Bankruptcy Case, including, but not limited to, a review of all of the relevant filings, orders, and evidence filed or entered in those proceedings.

**C.    Technical Modifications to the Plan**

7.    The Debtor filed the First Technical Modifications to the Plan on April 21, 2006, and the Second Technical Modifications to the Plan on June 8, 2006 (collectively, the "Technical Modifications").[9]

8.    The Technical Modifications do not materially alter or adversely affect the treatment of any Claim against or Equity Interest in the Debtor.  Pursuant to section 1127(b) of the Bankruptcy Code and Bankruptcy Rule 3019, the Technical Modifications do not require additional disclosure under section 1125 of the Bankruptcy Code or the resolicitation of acceptances or rejections under section 1126 of the Bankruptcy Code, nor do they require that holders of Claims against or Equity Interests in the Debtor be afforded the opportunity to change previously cast ballots.

---

. . . Continued Footnote

[7] Duplantier Aff. at 2, Hrg. Ex. 4.
[8] Id.
[9] Dkt. Nos. 31 and 216, Hrg. Exs. 37 and 38.

4

9.      Accordingly, the Plan, as amended by the Technical Modifications, is properly before this Court and all votes cast with respect to the Plan, prior to the Technical Modifications, shall be binding and shall be deemed cast with respect to the Plan as amended by the Technical Modifications.

## FINDINGS OF FACT

**A.    General Background**

10.     Lummus filed a voluntary petition for relief under the Bankruptcy Code on April 21, 2006 (the "Petition Date").[10]  Concurrently therewith, the Debtor also filed the Plan,[11] Disclosure Statement,[12] and a motion seeking approval of the adequacy of the Disclosure Statement, approval of the solicitation procedures, and confirmation of the Plan.[13]

11.     By order dated May 16, 2006, this Court appointed Richard B. Schiro as the legal representative for future asbestos claimants (the "Lummus Future Claimants' Representative" or "Lummus FCR"), nunc pro tunc to the Petition Date.[14]

12.     On or about June 12, 2006, the United States Trustee for the District of Delaware appointed an official asbestos claimants committee in the Chapter 11 Case pursuant to section 1102(a)(1) of the Bankruptcy Code (the "ACC").[15]  Prior to the appointment of the ACC by the United States Trustee, an informal ad hoc committee of asbestos claimants (the "ad hoc ACC") was in place and served as a negotiating counterpart to the Debtor and ABB in the development of the Plan.

---

[10] Dkt. No. 1, Hrg. Ex. 16.
[11] Dkt. No. 14, Hrg. Ex. 2.
[12] Dkt. No. 15, Hrg. Ex. 1.
[13] Dkt. No. 32, Hrg Ex. 17; Duplantier Aff. at 5, Hrg. Ex. 4.
[14] Dkt. No. 138, Hrg. Ex. 31.
[15] Dkt No. 219.

13.     On June 21, 2006, this Court held a combined hearing to determine the adequacy of the information contained in the Disclosure Statement and whether to confirm the Plan (the "Confirmation Hearing").

14.     The Debtor made the decision to file for Chapter 11 relief as part of a settlement with other parties-in-interest that will ultimately resolve the independent asbestos-related personal injury liabilities of the Debtor in the Chapter 11 Case.[16]

15.     On December 19, 2005, the Bankruptcy Court entered the CE Confirmation Order[17] and on March 1, 2006, the District Court entered an order affirming the CE Confirmation Order,[18] including, but not limited to, the confirmation of the CE Plan and the issuance of the Channeling Injunction and the Asbestos Insurance Entity Injunction (as such terms are defined in the Glossary of Terms for the Plan Documents Pursuant to Combustion Engineering, Inc.'s Plan of Reorganization, as Modified through October 7, 2005 (the "CE Glossary")).[19]

16.     The Effective Date of the CE Plan occurred on April 21, 2006.[20] Shortly after the confirmation of the CE Bankruptcy Case, Lummus commenced its own Chapter 11 Case. The Plan is the product of investigation and negotiation among the Debtor, ABB, the Lummus FCR, the ad hoc ACC, the CCC, the official creditors' committee appointed in the CE Chapter 11 Case (the "CE Official Creditors' Committee"), and David Austern, the future claimants' representative appointed in the CE Bankruptcy Case (the "CE Future Claimants' Representative"), and will maximize the recovery available to current and future asbestos-related personal-injury claimants, while enhancing the value of the Debtor's Bankruptcy Estate for the benefit of the Debtor's creditors and other parties-in-interest.[21]

---

[16] Duplantier Aff. at 10-12, Hrg. Ex. 4.
[17] CE Dkt. No. 2752, Hrg. Ex. 34.
[18] CE Dkt. No. 2890, Hrg. Ex. 35.
[19] Duplantier Aff. at 4, Hrg. Ex. 4.
[20] Id. at 5.
[21] Id.

17.    Under the Plan, the only impaired creditors are those holding Lummus Asbestos PI Trust Claims (Class 5), Non-Debtor Affiliate Intercompany Claims (Class 6), and Equity Interests (Class 7).[22]  All other classes of creditors are unimpaired under the Plan and will receive full payment of their Claims on the Effective Date, or, thereafter, as and when they become due.[23]

18.    Prior to the Petition Date, the Debtor solicited acceptances of the Plan from all known holders of impaired Claims and received acceptances from the Class 5 and 6 Claimants and the Class 7 holders of Equity Interests.[24]  Acceptances were obtained from in excess of ninety six percent (96%) of those Class 5 Claimants whose Claims are to be addressed by the Lummus Asbestos PI Trust and one-hundred percent (100%) of Class 6 Claimants.[25]  The Plan also was accepted by one-hundred percent (100%) of the holders of Class 7 Equity Interests.[26]  Accordingly, acceptances have been received in an amount sufficient to satisfy the requirements of sections 524(g) and 1126(c) of the Bankruptcy Code and to obtain the issuance of the Lummus Asbestos PI Channeling Injunction and the Lummus Asbestos Insurance Entity Injunction and to confirm the Plan.[27]

**B.    <u>Corporate Structure and Relationship of CE and ABB</u>**

19.    The Debtor is a Delaware corporation and a wholly owned subsidiary of ABB Holdings, also a Delaware corporation.[28]  ABB Holdings is an indirect subsidiary of ABB, a corporation organized and existing under the laws of Switzerland.[29]

---

[22] Plan at 2-5, Hrg. Ex. 2; Duplantier Aff. at 5, Hrg. Ex. 4.
[23] Duplantier Aff. at 5, Hrg. Ex. 4.
[24] Id. at 5-6; Murray Aff. at 2-3, Hrg. Ex. 7.
[25] Murray Aff. at 5, Hrg. Ex. 7; Duplantier Aff. at 6, Hrg. Ex. 4.
[26] Murray Aff. at 5, Hrg. Ex. 7.
[27] Duplantier Aff. at 6, Hrg. Ex. 4.
[28] Id. at 2.
[29] Id.

20.    The Debtor also is an affiliate of CE, which prior to April 21, 2006, was a debtor and now is a reorganized debtor in a separate but related chapter 11 case pending before this Court.[30]

C.    **Corporate Relationship of ABB Holdings and the Other ABB Subsidiaries to Lummus**

21.    ABB Holdings and the other ABB Subsidiaries that are listed on Exhibit B to the Plan are Subsidiaries of ABB and, therefore, Affiliates of the Debtor.[31]  The OGP Parties and the Alstom Protected Parties that constitute the remainder of the entities listed on Exhibit B to the Plan are all former Subsidiaries (or successors of such Subsidiaries) of ABB.[32]  In addition, the OGP Parties, the Alstom Protected Parties, and the Settling Lummus Asbestos Insurance Entities are all entities who were involved in financial transactions with the Debtor that affected the financial condition of the Debtor or a party related to the Debtor.[33]

D.    **The Business of Lummus and the History of Asbestos Claims and Litigation**

22.    Lummus currently provides proprietary process technology and equipment, project management, and engineering, procurement, and construction services to the oil and gas, refining, and petrochemical industries.[34]

23.    The Debtor, and its wholly owned subsidiary, ABB Lummus Global International Corporation ("Lummus International"), are defendants in a large number of asbestos-related personal injury lawsuits pending in various parts of the United States.[35]  ABB Lummus Global Construction Co. ("Lummus Construction"), a former Affiliate of Lummus, which was merged into Lummus in July 2005, also is a named defendant in a number of pending asbestos-related

---

[30] Id.
[31] Brett Aff. at 2, Hrg. Ex. 5.
[32] Id.
[33] Id.
[34] Duplantier Aff. at 2, Hrg. Ex. 4.
[35] Id. at 3.

DOCS_DE:119243.1

personal injury lawsuits.[36]  All of the asbestos-related personal injury claims that have been

asserted against Lummus International and Lummus Construction are factually derivative of

claims against Lummus.[37]  As part of its business, Lummus provides engineering and

construction services to the ABB subsidiaries (the "ABB Group").  It is these types of services

which have given rise to a substantial portion of the Debtor's asbestos liabilities.  As a result, all

such ABB Group entities may be targets that are at risk for inclusion in future asbestos lawsuits

arising out of the operations of the Debtor, a known asbestos defendant.[38]

24.    In the years following 1999, Lummus and certain of its Affiliates began to be

named in increasing numbers of lawsuits across the country.  Also, after 1999, asbestos-related

personal injury claims, which were at one time isolated to the jurisdictions of New York and

New Jersey, expanded to other jurisdictions, including, among others, California, Louisiana, and

Texas.[39]

25.    Unlike the cases pending or filed in New York and New Jersey, the cases filed in

other jurisdictions have alleged that Lummus' liability arises out of its status as an independent

contractor rather than as a manufacturer of asbestos-containing products.[40]  It is alleged that

employees of Lummus and other third parties were exposed to asbestos during the construction

of certain refineries and chemical plants.[41]  In most instances, it is alleged that Lummus and/or

certain of its Affiliates were involved in either the actual construction of the facilities or the

design of the processing plants that allegedly contained asbestos products.[42]

---

[36] Id.
[37] Id. at 3-4.
[38] Id. at 4.
[39] Id. at 7.
[40] Id. at 8.
[41] Id.
[42] Id.

26.     Since 1991, over 12,790 claims have been filed against Lummus, Lummus Construction, and Lummus International.[43]  The number of open asbestos-related personal injury claims pending against Lummus, Lummus International, and Lummus Construction is approximately 11,014.[44]  In the CE Bankruptcy Case, this Court issued an injunction enjoining, among other things, the institution of new asbestos personal injury claims against Lummus.[45]

**E.     Development of the Plan**

27.     Initially, the efforts to find a resolution to Lummus' asbestos-related personal injury liabilities focused on the prepackaged chapter 11 plan of reorganization of CE that was filed on February 17, 2003 (the "Original CE Plan") in the CE Bankruptcy Case.[46]  In connection with the Original CE Plan, ABB, Asea Brown Boveri, Lummus, and certain other Affiliates agreed to make certain cash payments, contribute capital stock, and assign certain rights to insurance proceeds to the asbestos trust to be established pursuant to the Original CE Plan in consideration of the provision of a channeling injunction issued, inter alia, under section 524(g) of the Bankruptcy Code, and the releases and indemnification protections for the benefit of CE, ABB, Asea Brown Boveri, Lummus, and certain other Affiliates.[47]

28.     This Court entered findings of fact and conclusions of law, and the Original CE Plan ultimately was confirmed on July 10, 2003 (the "Original Bankr. Ct. Confirm Order"). Thereafter, the District Court entered a revised Confirmation Order on August 8, 2003, affirming this Court's findings of fact and conclusions of law contained in the Original Bankr. Ct. Confirm Order.

29.     On December 2, 2004, the United States Court of Appeals for the Third Circuit (the "Third Circuit") vacated the Confirmation Order in the CE Bankruptcy Case and

---

[43] Id.
[44] Id.
[45] Id.
[46] Id.
[47] Id.

remanded the order of the District Court, holding among other things, that the Original CE

Plan would not be able to provide Lummus and other non-debtor Affiliates of CE with the

benefits of a section 524(g) channeling injunction that would discharge these non-debtor

entities of asbestos liabilities that were non-derivative of CE's asbestos liabilities.[48]

30.     Shortly thereafter, CE began negotiations with ABB, the CE Unsecured Creditors'

Committee, the CE Future Claimants' Representative, the CCC, and certain other parties-in-

interest to formulate modifications to the Original CE Plan, in order to comply with the Third

Circuit opinion.[49]  The parties finally agreed to certain modifications to the Original CE Plan, as

memorialized in an agreement in principle (the "Agreement in Principle").[50]  The Agreement in

Principle provided a new framework for what would eventually result in the CE Plan and the

Lummus Plan currently before this Court.[51]

31.     On June 24, 2005, the CE Plan was filed, and on December 19, 2005, this Court

entered an order confirming the CE Plan.[52]  This Court's order confirming the CE Plan was

affirmed by the District Court on March 1, 2006.[53]

32.     The process leading to the development of the Lummus Plan involved the

following steps:[54]

>    (a)     The formation of the ad hoc ACC, comprised of counsel for holders of
>            asbestos-related personal injury claims against the Debtor to serve as a
>            negotiating counterpart to ABB and Lummus in connection with the
>            development of the Plan;

---

[48] See In re Combustion Eng'g, Inc., 391 F.3d 190, 248-49 (3d Cir. 2004); Duplantier Aff. at 10, Hrg. Ex. 4.
[49] Duplantier Aff. at 10, Hrg. Ex. 4.
[50] Id.
[51] Id. at 10-12.
[52] CE Dkt. No. 2752, Hrg. Ex. 34.
[53] CE Dkt. No. 2890, Hrg. Ex. 35.
[54] Duplantier Aff. at 11-12, Hrg. Ex. 4.

11

(b)    The selection and retention of Mr. Richard B. Schiro, as the Lummus FCR to represent and to negotiate on behalf of the interests of future and unknown Lummus Asbestos PI Trust Claimants and to ensure that the contributions to the Lummus Asbestos PI Trust are adequate to pay such claimants in full the allowed value of their claims in accordance with the terms, provisions, and procedures of the Lummus TDP;

(c)    Mr. Schiro's retention of various professionals to assist him in evaluating the terms of the Agreement in Principle as it related to holders of future Demands, including the retention of Hamilton Rabinowitz & Alschuler, as his expert;

(d)    The negotiation of an acceptable Plan and other Plan Documents among Lummus, ABB, the CCC, the ad hoc ACC, and the Lummus FCR; and

(e)    The documentation of the Plan and the Plan Documents, and the preparation of the Disclosure Statement.

33.    Following months of intense negotiations and numerous enhancements to the terms of the Plan, including the increase in the amount of the Lummus Note from $28 million to $33 million and the Lummus Insurance Recovery Guaranteed Payment to be contributed to the Lummus Asbestos PI Trust, the parties finalized the Plan and Disclosure Statement.  The broad based support for the Plan is a direct result of the substantial contributions made by ABB, ABB Holdings, and the Debtor on behalf of themselves and the entire ABB Group.

34.    The key financial components of the Plan are primarily reflected in the ABB and Non-Debtor Affiliate Settlement Agreement (Lummus) between and among Lummus, ABB, ABB Holdings, the Lummus FCR, and the Lummus Asbestos PI Trust:[55]

(a)    Lummus will execute and deliver to the Lummus Asbestos PI Trust the Lummus Note, an interest bearing note in the principal amount of $33 million (which is an increase of $5 million over the amount of the note which was provided for the benefit of Lummus' asbestos claimants in the Original CE Plan), which note provides for a remedy available to the Lummus Asbestos PI Trust and is exercisable during the continuance of an event of default, whereby the Lummus Asbestos PI Trust is entitled to 51% of the shares of the Capital Stock of Lummus;

---

[55] Id. at 12.

(b)     ABB and ABB Holdings will execute the guarantees that will guarantee the payment obligations of the Lummus Note;

(c)     ABB Holdings will execute and deliver the Pledge and Irrevocable Proxy (as defined in the ABB and Non-Debtor Affiliate Settlement Agreement (Lummus)) pursuant to which 51% of the Capital Stock of Lummus will be pledged to the Lummus Asbestos PI Trust as security for the Lummus Note to, among other things, vote such Capital Stock in the event of default or upon the occurrence of certain additional events as set forth under the Lummus Note and Pledge and Irrevocable Proxy;

(d)     Lummus will pay to the Lummus Asbestos PI Trust for or on behalf of the Debtor and the ABB Indemnified Parties, the Lummus Insurance Recovery Guaranteed Payment. The Lummus Insurance Recovery Guaranteed Payment provides for the guaranteed payment of $5 million to the Lummus Asbestos PI Trust from insurance recoveries.

(e)     Indebtedness outstanding as of March 21, 2006, owed by Lummus to ABB Holdings and ABB Treasury Center (USA) Inc. (the "Intercompany Debt") will be subordinated to the repayment of the Lummus Note. As of March 21, 2006, the Intercompany Debt totaled approximately $532 million. The Intercompany Debt also will be subordinated to the $204 million additional contribution (the "Additional Contribution") to be made to the CE Asbestos PI Trust in connection with the CE Plan.

35.     In addition to the financial contributions described above, ABB Treasury Center (USA) Inc. ("ABBTC") and ABB Holdings provided debtor-in-possession financing ("DIP") and will provide exit financing totaling $300 million.[56] This financing will allow the Debtor to satisfy its obligations to the Lummus Asbestos PI Trust and continue to operate in the normal course of business.[57] This financing, along with the subordination of the Intercompany Debt, will allow all creditors to be paid in full, and will allow the Lummus Asbestos PI Trust Claimants, to be paid the allowed value of their claims[58] in accordance with the terms, provisions, and procedures of the Lummus TDP.[59]

---

[56] Brett Aff. at 4, Hrg. Ex. 5; Schiro Aff. at 9, Hrg. Ex. 8.
[57] Ford Aff. at 3, Hrg. Ex. 10.
[58] Specifically, the review procedure and values to be paid with respect to the Lummus Asbestos PI Trust Claims filed with the Lummus Asbestos PI Trust are set forth in detail in Article 5 of the TDP. These values include, among others, Scheduled Values, Average Values, and Maximum Values to be paid to Lummus Asbestos PI Trust Claimants. (See TDP section 5.2(b)(3) and the table set forth below.) With

Footnote Continued . . .

DOCS_DE:119243.1

36.    In return for these substantial contributions, the ABB Group and the Asbestos Protected Parties will receive the benefit of the Lummus Asbestos PI Channeling Injunction to be issued in the Chapter 11 Case and will receive a release from the Debtor, the Reorganized Debtor, the Debtor's Bankruptcy Estate, and the Lummus Asbestos PI Trust on the Effective Date of all claims and causes of action, that the Debtor, the Reorganized Debtor, the Bankruptcy Estate, or the Lummus Asbestos PI Trust may have against them.[60]

---

. . . Continued Footnote

respect to the references to the values paid pursuant to the TDP, these values are incorporated herein by reference, however it is noted that such values may be modified in accordance with the terms and conditions set forth in the TDP:

Lummus Design and Construction Claims:

| Scheduled Disease | Scheduled Value | Average Value | Maximum Value |
| --- | --- | --- | --- |
| Mesothelioma (Level VIII) | $25,000 | $60,000 | $400,000 |
| Lung Cancer 1 (Level VII) | $7,500 | $12,500 | $75,000 |
| Lung Cancer 2 (Level VI) | Subject to Individual Review | $5,000 | $30,000 |
| Other Cancer (Level V) | $2,500 | $5,000 | $15,000 |
| Severe Asbestosis (Level IV) | $7,500 | $12,500 | $75,000 |
| Asbestosis (Level III) | $3,000 | $Scheduled Value | $Scheduled Value |
| Asbestosis/Pleural Disease (Level II) | $2,000 | $Scheduled Value | $Scheduled Value |
| Other Asbestos Disease (Cash Discount Payment (Level I) | $200 | None | None |

Lummus Feedwater Heater Claims:

| Scheduled Disease | Scheduled Value | Average Value | Maximum Value |
| --- | --- | --- | --- |
| Mesothelioma (Level VIII) | $1,000 | $6,000 | $25,000 |
| Lung Cancer 1 (Level VII) | $1,000 | $2,000 | $8,000 |
| Lung Cancer 2 (Level VI) | Subject to Individual Review | $1,000 | $4,000 |
| Other Cancer (Level V) | $550 | $700 | $1,000 |
| Severe Asbestosis (Level IV) | $1,000 | $2,000 | $8,000 |
| Asbestosis (Level III) | $400 | $Scheduled Value | $Scheduled Value |
| Asbestosis/Pleural Disease (Level II) | $200 | $Scheduled Value | $Scheduled Value |
| Other Asbestos Disease (Cash Discount Payment (Level I) | $100 | None | None |

[59] Brett Aff. at 4, Hrg. Ex. 5; Schiro Aff. at 9, Hrg. Ex. 8.
[60] Duplantier Aff. at 13, Hrg. Ex. 4.

DOCS_DE:119243.1

F.    **The Debtor's Plan of Reorganization**

37.    Classification.  In accordance with section 1123(a)(1) of the Bankruptcy Code,
Administrative Expense Claims and Tax Claims are not classified and are excluded from the
Classes established in Article III of the Plan. The Plan groups Lummus Claimants into the
following Classes in accordance with section 1122(a) of the Bankruptcy Code:[61]

> Class 1 - Priority Claims
>
> Class 2 - Secured Claims
>
> Class 3 - Workers' Compensation Claims
>
> Class 4 - General Unsecured Claims
>
> Class 5 - Lummus Asbestos PI Trust Claims
>
> Class 6 - Non-Debtor Affiliate Intercompany Claims
>
> Class 7 - Equity Interests

38.    Only claims in Classes 5 and 6 and Equity Interests in Class 7 are impaired
under the Plan.[62]

> (a)    Class 5.  As of the Lummus Confirmation Date, liability for all Lummus
> Asbestos PI Trust Claims other than Settled Asbestos Claims shall be
> assumed by the Lummus Asbestos PI Trust without further act or deed,
> and the Reorganized Debtor shall have no liability therefor.  All Lummus
> Asbestos PI Trust Claims will be subject to the Lummus Asbestos PI
> Channeling Injunction.  All Lummus Asbestos PI Trust Claims shall be
> evaluated, determined, and paid (if and to the extent entitled to payment)
> pursuant to the terms, provisions, and procedures of the Lummus Asbestos
> PI Trust, the Lummus Asbestos PI Trust Agreement, and the Lummus
> TDP.  The Lummus Asbestos PI Trust will be funded in accordance with
> the provisions of Article 7 of the Plan and the Lummus Asbestos PI Trust
> Agreement.
>
> (b)    Class 6.  All Non-Debtor Affiliate Intercompany Claims will be
> subordinated pursuant to the ABB and Non-Debtor Affiliate Settlement
> Agreement (Lummus).  More specifically, pursuant to the ABB and Non-
> Debtor Affiliate Settlement Agreement (Lummus), the Lummus Asbestos

---

[61] Id. at 13-14.
[62] Id. at 14-15.

DOCS_DE:119243.1

PI Trust shall be entitled to receive payment in full in cash of the obligations to be paid pursuant to the Lummus Note, excepting Unmatured Contingent Obligations (as defined in the ABB and Non-Debtor Affiliate Settlement Agreement (Lummus)), before any member of the ABB Group (as defined in the ABB and Non-Debtor Affiliate Settlement Agreement (Lummus)) receives any payment or distribution in respect of: (i) the Subordinated Intercompany Indebtedness (as defined in the ABB and Non-Debtor Affiliate Settlement Agreement (Lummus)), and (ii) Exit Financing, but only (A) during the continuation of an Event of Default under the Lummus Note or (B) if upon the consummation of the first to occur, if any, of (x) a Complete Asset Disposition (as defined in the Lummus Note) or (y) a Stock Disposition (as defined in the Lummus Note), and after giving effect to the Mandatory Prepayments (as defined in the Lummus Note) required to be made following such Complete Asset Disposition or Stock Disposition and to any Optional Payments (as defined in the Lummus Note) paid prior to such time, the amounts owed in respect of principal and interest under the Lummus Note have not been paid in full.

(c)    Class 7.  On the Effective Date, holders of Equity Interests in Lummus shall retain such interests subject to the pledge and security interest in fifty-one percent (51%) of the issued and outstanding shares of Capital Stock of Lummus held by ABB Holdings as of the Effective Date to secure the Lummus Note and the guarantees provided by ABB and ABB Holdings with respect to Lummus' payment obligations under the Lummus Note.

## G.    **Insurance Neutrality and Insurer Settlements**

39.    The Plan contains the identical super-preemptory and insurance neutrality clauses as approved by this Court in the CE Bankruptcy Case.[63]  Further, the Plan does not contemplate an assignment of insurance policies or insurance rights.[64]

40.    As part of the Chapter 11 Case, Lummus compromised and settled its coverage controversies with its major insurance carriers that provided coverage for asbestos-related personal injury claims against Lummus.[65]

---

[63] Plan at 4, Hrg. Ex. 2.

[64] Duplantier Aff. at 15, Hrg. Ex. 4.

[65] See Order Authorizing and Approving Settlement Agreement and Release Between ABB Lummus Global Inc., Lloyd's Underwriters and the Trust (Upon Its Creation), Dkt. No. 140; and Certificate of No Objection Regarding Motion to Approve Settlement Agreement and Complete Policy Release Between

Footnote Continued . . .

### H.     Solicitation Procedures and Balloting Results

41.     The Debtor's solicitation process began on August 30, 2005, whereupon the Debtor delivered, by first class mail, a postage prepaid envelope, a copy of the Disclosure Statement, including the Plan and all exhibits, together with a master ballot designed for voting for Class 5 Claims (the "Master Ballot") (collectively, all such solicitation materials sent to counsel are hereinafter referenced as the "Attorney Solicitation Package"), to each counsel of record who currently represents or in the past has represented individual asbestos-related personal-injury claimants.[66] The ballots clearly stated that in order to be counted, completed ballots had to be received by the Debtor's balloting agent, Bankruptcy Services LLC ("BSI") by 4 p.m. EST on September 26, 2005.[67] The voting deadline was extended to 5 p.m. EST on September 30, 2005, in consideration of the disruption caused to numerous claimants and their counsel as a result of Hurricane Katrina.[68] Approximately 53 attorneys received these Attorney Solicitation Packages.[69]

42.     The Debtor also advised attorneys of Class 5 Lummus Asbestos PI Trust Claimants that, if requested, the Debtor would mail individual solicitation packages, including the Disclosure Statement, an individual Class 5 ballot, a pre-addressed envelope for returning the ballot, and, if requested, a letter from the Claimant's legal counsel regarding the Plan ("Individual Solicitation Packages").[70] Some attorneys took advantage of this offer, and, as a result, Individual Solicitation Packages were also directly distributed to approximately 4,829 Class 5 Lummus Asbestos PI Trust Claimants who were represented by counsel.[71]

---

. . . Continued Footnote

ABB Lummus Global Inc. and Certain London Market Insurance Companies, Dkt. No. 224; Duplantier Aff. at 16, Hrg. Ex. 4.

[66] Murray Aff. at 2, Hrg. Ex. 7.
[67] Id.
[68] Id.
[69] Id.
[70] Id.
[71] Id.

43.     The mailing of both the Attorney Solicitation Packages and the Individual Solicitation Packages by the Debtor by first class mail postage prepaid, commenced on August 30, 2005.[72] In an additional effort to ensure that all individuals and counsel representing clients with asbestos-related personal injury claims allegedly caused by the Debtor were extended the opportunity to request solicitation packages, the Debtor published notices of solicitation in The Wall Street Journal, National Edition, The Newark Star-Ledger, and The Houston Chronicle (collectively, the "Publication Notices").[73] The notices were published on August 31, 2005, and provided information on how creditors and parties in interest could obtain copies of the solicitation materials and ballots.[74]

44.     In a further effort to maximize notice and to ensure that the solicitation process was as complete as possible, the Debtor also made the Disclosure Statement available in electronic format on a special solicitation information website (www.lummus-restructuring.com) maintained by the Debtor.[75]

45.     Claimants and their counsel were given extensive notice of the Debtor's solicitation process and were given more than thirty (30) days from the transmittal of the Plan and Disclosure Statement to vote on the Plan.[76] The Plan and Disclosure Statement have been in the hands of the claimants and their counsel for months and yet the Debtor has received no indication that any creditor did not receive a solicitation package or wishes to change his or her vote in favor of the Plan to a vote against the Plan.[77]

---

[72] Id.
[73] Id. at 3.
[74] Id.
[75] Id.
[76] Id. at 2.
[77] Id. at 4.

DOCS_DE:119243.1

46.     Inasmuch as every known Class 5 Claimant or his/her counsel were sent an Attorney Solicitation Package or an Individual Solicitation Package, all claimants have, in fact, received the Plan and Disclosure Statement.

47.     The votes received and tabulated evidence that there is overwhelming acceptance of the Plan by the Class 5 Lummus Asbestos PI Trust Claimants, with more than ninety-six percent (96%) of the ballots cast in favor of the Plan.[78]

48.     Class 6 Claimants also received ballots from BSI and voted unanimously in favor of the Plan.[79]

49.     Holders of Class 7 Equity Interests also have voted unanimously in favor of the Plan.[80]

I.     **The Plan is in the Best Interests of the
       Present and Future Creditors of Lummus**

50.     The Plan includes significant financial contributions from the Debtor, ABB, ABB Holdings, and certain other members of the ABB Group.  This, along with other financial consideration provided for in the Plan, provide for superior treatment to claimants than would be possible in the context of any independent, stand-alone resolution of Lummus' asbestos liability.

51.     The Plan provides the Debtor's impaired creditors with property of a value at least equal to the value that they would receive in a chapter 7, and the best interests test of section 1129(a)(7) of the Bankruptcy Code is clearly satisfied.[81]

52.     Support for this finding comes from the liquidation analysis (the "Liquidation Analysis") provided by Pamela Zilly, Senior Managing Director of The Blackstone Group, L.P.,

---

[78] Id. at 5.
[79] Id.
[80] Id.
[81] Zilly Aff. at 6, Hrg. Ex. 6.

Lummus' financial advisor.[82]  Ms. Zilly has extensive experience with Chapter 11 restructurings, advising both debtors and creditors in various financial distress situations.[83]

53.    Based upon the Liquidation Analysis, unsecured creditors would expect only to receive between 24% and 34.4% of the Allowed Amount of their Claims in a chapter 7 liquidation of Lummus.[84]  By contrast, the Plan provides for a 100% payment of Class 4 General Unsecured Claims, and Class 5 Lummus Asbestos PI Trust Claimants will be paid the allowed value of their claims in accordance with the terms, provisions, and procedures of the Lummus TDP.[85]

54.    Furthermore, based upon the testimony provided by the Lummus FCR and his professionals, as well as a review of the Plan itself, it is clear that the Plan provides for the creation of a sufficient and reliable pool of assets such that the payments to both present and future claimants will be made in a substantially similar manner, all in accordance with the terms of the Lummus TDP except as otherwise provided in the Plan.[86]

55.    The holders of Demands will fare better under the Plan than they would in a chapter 7 liquidation inasmuch as in chapter 7 liquidation, the Lummus Insurance Recovery Guaranteed Payment and the guarantees of ABB and ABB Holdings of the Lummus Note would not be available to satisfy the claims of future claimants.[87]

56.    The Lummus FCR has further testified that in his opinion, the identification of the Asbestos Protected Parties in the Lummus Asbestos PI Channeling Injunction is fair and equitable with respect to persons who might subsequently assert asbestos-related Demands

---

[82] Id. at 1-2.
[83] Id. at 2.
[84] Id. at 6.
[85] Id.; Schiro Aff. at 8, Hrg. Ex. 8; Rabinovitz Aff. at 11, Hrg. Ex. 9.
[86] Schiro Aff. at 8, Hrg. Ex. 8; Rabinovitz Aff. at 12, Hrg. Ex. 9.
[87] Zilly Aff. at 4, Hrg. Ex. 6.

DOCS_DE:119243.1

against any such Asbestos Protected Party in light of the benefits provided and to be provided to the Lummus Asbestos PI Trust.[88]

57.    In light of the uncontradicted evidence on the record, confirmation of the Plan is in the best interests of, and is fair and equitable to, persons who might subsequently assert Demands against the Asbestos Protected Parties.

**J.    Confirmation of the Plan is Not Likely to Be
Followed By the Liquidation or Need For
Further Financial Reorganization of Lummus**

58.    As reflected in the testimony of Margaret Duplantier and Michael Ford, Lummus will be able to perform all of its material obligations under the Plan upon confirmation by this Court.[89]  Further, Lummus will have sufficient financing to meet its working capital needs and achieve the revenue, profit, and EBIT projections, and confirmation of the Plan will not be followed by liquidation or further reorganizations of Lummus.[90]

59.    Lummus forecasts that its business will be profitable and that it will be able to complete its reorganization efforts in a manner that fosters its ability to stand-alone as a successful and viable entity.[91]  Lummus also estimates that, on a consolidated basis, Lummus and its affiliates will have earnings before interest and taxes of $50 million in 2007, $56 million in 2008, and $61 million in 2009.[92]  Further, Lummus will receive $300 million in exit financing from ABB Holdings and ABBTC.[93]  The earnings and net working capital are sufficient for Lummus to satisfy its obligations under the Plan and the Lummus Note.[94]

---

[88] Schiro Aff. at 11, Hrg. Ex. 8.
[89] Duplantier Aff. at 17, Hrg. Ex. 4; Ford Aff. at 3, Hrg. Ex. 10.
[90] Ford Aff. at 3, Hrg. Ex. 10.
[91] Id. at 2-3.
[92] Id. at 2.
[93] Id. at 3; Brett Aff. at 4, Hrg. Ex. 5.
[94] Ford Aff. at 3, Hrg. Ex. 10.

60.     Subsequent to the Effective Date of the Plan, Lummus will retain its assets and continue the operation of its business. Lummus anticipates that the cash flow generated through the operation of its business, as supplemented by the $300 million in exit financing provided by ABB Holdings, will be sufficient to pay its ongoing business expenses.[95] Without the drain of its asbestos liability, Lummus will be able to maintain its business operations and comply with the terms of the Plan.[96]

61.     Furthermore, as Lummus and the Lummus FCR have concluded, Lummus' contributions to the Lummus Asbestos PI Trust are expected to be sufficient to satisfy in full the allowed value of all claims of future Lummus Asbestos PI Trust Claimants in accordance with the terms, provisions, and procedures of the Lummus TDP.[97] Accordingly, it is clear Lummus will be able to implement the provisions of the Plan, and, therefore, the Plan is feasible as required by section 1129(a)(11) of the Bankruptcy Code.

**K.     Required Findings of Fact Under The Plan**

62.     Based upon this Court's review of the record in this Chapter 11 Case and the testimony and evidence adduced at the Confirmation Hearing, this Court makes the findings enumerated in paragraphs 64 through 82 below, which findings satisfy section 7.9 of the Plan:

63.     The Lummus Asbestos PI Channeling Injunction and the Lummus Asbestos Insurance Entity Injunction are to be implemented in accordance with the Plan and the Lummus Asbestos PI Trust Documents.

64.     As of the Petition Date, the Debtor has been named as a defendant in personal injury, wrongful death, or property damage actions seeking recovery for damages allegedly caused by the presence of, or exposure to, asbestos or asbestos-containing products.

---

[95] Id. at 3.
[96] Duplantier Aff. at 17-18, Hrg. Ex. 4.
[97] Schiro Aff. at 8-9, Hrg. Ex. 8; Duplantier Aff. at 17, Hrg. Ex. 4; supra, n.58.

DOCS_DE:119243.1

65.     The Lummus Asbestos PI Trust is to be funded in part by securities of the Debtor and by the obligations of the Debtor to make future payments.

66.     The Lummus Asbestos PI Trust, on the Effective Date, by the exercise of rights granted under the Plan, would be entitled to own if specific contingencies occur, the majority of the voting shares of the Reorganized Debtor.

67.     Except as otherwise provided in the Plan, the Lummus Asbestos PI Trust is to use its assets and income to pay Lummus Asbestos PI Trust Claims in accordance with the Lummus Asbestos PI Trust Agreement and the Lummus TDP.

68.     The Debtor is likely to be subject to substantial future Demands for payment arising out of the same or similar conduct or events that gave rise to the Lummus Asbestos PI Trust Claims, which are addressed by the Lummus Asbestos PI Channeling Injunction and the Lummus Asbestos Insurance Entity Injunction.

69.     The actual amounts, numbers, and timing of Demands cannot be determined.

70.     Pursuit of Demands outside the procedures prescribed by the Plan and the Lummus TDP is likely to threaten the Plan's purpose to deal equitably with Lummus Asbestos PI Trust Claims.

71.     The terms of the Lummus Asbestos PI Channeling Injunction and the Lummus Asbestos Insurance Entity Injunction, including any provisions barring actions against third parties, are set out in the Plan and described in the Disclosure Statement.

72.     Pursuant to court orders, the Lummus TDP, or otherwise, the Lummus Asbestos PI Trust shall operate through mechanisms such as structured, periodic, or supplemental payments, pro rata distributions, matrices, or periodic review of estimates of the numbers and values of Lummus Asbestos PI Trust Claims or other comparable mechanisms, that provide reasonable assurance that the Lummus Asbestos PI Trust shall value, and be in a financial

position to pay, present and future Lummus Asbestos PI Trust Claims in substantially the same manner.

73.    The Lummus FCR was appointed by this Court as part of the proceedings leading to the issuance of the Lummus Asbestos PI Channeling Injunction and the Lummus Asbestos Insurance Entity Injunction for the purpose of, among other things, protecting the rights of persons that might subsequently assert Demands of the kind that would constitute Lummus Asbestos PI Trust Claims and are addressed in the Lummus Asbestos PI Channeling Injunction and the Lummus Asbestos Insurance Entity Injunction and transferred to the Lummus Asbestos PI Trust.

74.    The Lummus Asbestos PI Trust will be funded with a sufficient and reliable pool of assets that will allow the Lummus Asbestos PI Trust to adequately pay Lummus Asbestos PI Trust Claims.

75.    In light of the benefits provided, or to be provided, to the Lummus Asbestos PI Trust and on behalf of each Asbestos Protected Party, the Lummus Asbestos PI Channeling Injunction and the Lummus Asbestos Insurance Entity Injunction are fair and equitable with respect to the persons that might subsequently assert Demands that would constitute Lummus Asbestos PI Trust Claims against any Asbestos Protected Party.

76.    The ABB Consideration and other benefits provided in the Plan for payment of Claims, including Lummus Asbestos PI Trust Claims, constitute substantial assets of the Plan.

77.    The Lummus Asbestos PI Channeling Injunction is properly entered and implemented pursuant to section 524(g) of the Bankruptcy Code.

78.    The Plan and its acceptance otherwise comply with the Bankruptcy Code, including, without limitation, section 524(g).

79.    Subject to Section 3.2.4.4 of the Plan, the Lummus Asbestos PI Trust shall have the sole and exclusive authority as of the Effective Date to assert the rights and defenses of

Asbestos Protected Parties with respect to all Lummus Asbestos PI Trust Claims other than any such rights against any Released Parties.

80.    The Lummus Asbestos PI Channeling Injunction and the Lummus Asbestos Insurance Entity Injunction are essential to the Plan and the Debtor's reorganization efforts.

81.    ABB Holding's contribution of the Lummus Asbestos Insurance Recovery Guaranteed Payment constitutes substantial assets of the Plan and the reorganization.

**L.    Appointment of Trust Advisory Committee**

82.    The Debtor, the CCC, the ACC, and the Lummus FCR have, pursuant to section 7.2.3 of the Plan, nominated individuals to serve as members of the Trust Advisory Committee and such individuals are identified in paragraph 25 of the Confirmation Order.

**M.    Appointment of Trustee of Lummus Asbestos PI Trust**

83.    The Lummus FCR, the CCC, and the ACC, pursuant to section 7.2.2 of the Plan, have nominated the Hon. Dean M. Trafelet (Ret.) to serve as Trustee of the Lummus Asbestos PI Trust.

**N.    Objections to Confirmation**

84.    The Scheduling Order fixed June 1, 2006, as the deadline for filing objections to the Plan.  No objections to confirmation of the Plan were filed either before or after the June 1, 2006 deadline.

## CONCLUSIONS OF LAW

### Compliance of the Plan and the Disclosure Statement With
### Requirements for Confirmation Under Section 1129 of the Bankruptcy Code

**A.    Section 1129(a)(1) – Plan Compliance**
**with the Provisions of the Bankruptcy Code**

85.    The Plan complies with all applicable provisions of the Bankruptcy Code as required by section 1129(a)(1) of the Bankruptcy Code.

25

86.     As required by section 1122(a) of the Bankruptcy Code, Article 3 of the Plan classifies each Claim against and Equity Interest in the Debtor into a class containing only substantially similar Claims or Equity Interests.  A reasonable basis exists for the classification scheme employed by the Plan, and the Debtor's classification of Claims and Equity Interests is fair and reasonable.

87.     Pursuant to section 1123(a)(1) of the Bankruptcy Code, Article 3 of the Plan properly classifies all Claims against the Debtor, excepting Claims of a kind specified in sections 507(a)(1), 507(a)(2), or 507(a)(8) of the Bankruptcy Code.

88.     Pursuant to section 1123(a)(2) of the Bankruptcy Code, Article 3 of the Plan properly identifies and describes the treatment of each class of Claims and Equity Interests that is not impaired under the Plan.

89.     Pursuant to section 1123(a)(3) of the Bankruptcy Code, Article 3 of the Plan properly identifies and describes the treatment of each class of Claims or Equity Interests that is impaired under the Plan.

90.     Pursuant to section 1123(a)(4) of the Bankruptcy Code, the Plan provides the same treatment for each Claim or Equity Interest in a particular class, unless the holder of a particular Claim or Equity Interest agrees to a less favorable treatment of such particular Claim or Equity Interest.

91.     In accordance with section 1123(a)(5) of the Bankruptcy Code, the Plan provides adequate means for its execution and implementation, including, without limitation, the execution and effectuation of the ABB and Non-Debtor Affiliate Settlement Agreement (Lummus), the creation of the Lummus Asbestos PI Trust, issuance of the Lummus Asbestos Insurance Entity Injunction and the Lummus Asbestos PI Channeling Injunction, the Effective Date contributions, and the post-Effective Date corporate management, governance, and actions of the Debtor and the Lummus Asbestos PI Trust set forth in Article 7 of the Plan.

26

92.    Pursuant to section 1123(a)(6) of the Bankruptcy Code, the Plan provides that, on or prior to the Effective Date, the Debtor shall adopt an Amended Certificate of Incorporation, which will prohibit the issuance of non-voting equity securities and provide for the appropriate distribution of voting power among all classes of equity securities authorized for issuance.

93.    In accordance with section 1123(a)(7) of the Bankruptcy Code, the provisions of the Plan, the Amended Certificate of Incorporation, the Asbestos PI Trust Agreement, and the Lummus TDP, regarding the selection of the executive officers and directors of the Reorganized Debtor, the selection of the initial Trustee of the Lummus Asbestos PI Trust, the initial members of the TAC, and the Lummus FCR, are consistent with the interests of the holders of Claims and Equity Interests, and with public policy, and the initial selection of each such individual is consistent with the interests of the holders of Claims and Equity Interests, and with public policy.

94.    Pursuant to section 1123(b)(1) of the Bankruptcy Code, the Plan impairs or leaves unimpaired, each class of Claims, secured or unsecured, or of Equity Interests.

95.    Pursuant to section 1123(b)(2) of the Bankruptcy Code, the Plan provides for the assumption of any unexpired lease or executory contract that has not been rejected by the Debtor with this Court's approval on or prior to the Effective Date, except those executory contracts and unexpired leases that the Debtor designates as being subject to rejection in connection with the Effective Date.

96.    As discussed in further detail below, in accordance with section 1123(b)(3) of the Bankruptcy Code, the Plan provides for the settlement or adjustment of all claims and interests belonging to the Debtor or its Bankruptcy Estate.  The Plan resolves all disputes between and among the Debtor and the Asbestos Protected Parties.  These settlements, resolutions, and releases are inextricably intertwined and constitute critical components of an appropriate settlement and compromise, consistent with Bankruptcy Rule 9019, which settlements are fair, equitable, reasonable, and in the best interests of the Debtor and its Bankruptcy Estate, the

27

Reorganized Debtor, the Lummus Asbestos PI Trust, and holders of Claims, Equity Interests, and Demands (including holders of Lummus Asbestos PI Trust Claims).

97.    In accordance with section 1123(b)(6) of the Bankruptcy Code, the Plan includes other appropriate provisions not inconsistent with the Bankruptcy Code, including, without limitation:

- The Debtor will possess Cash necessary to satisfy Allowed Administrative Expense Claims on the Effective Date, or as otherwise required by the Plan;

- The Debtor will possess Cash necessary to satisfy Allowed Claims in Classes 1, 2, 3, and 4 on the Effective Date;

- The Debtor will possess Cash necessary to cure any existing defaults relating to all executory contracts and unexpired leases assumed pursuant to the terms of the Plan; and

- The Plan consists of and incorporates a series of agreements negotiated among the Debtor and other entities, including, but not limited to, the ABB and Non-Debtor Affiliate Settlement Agreement (Lummus) to ensure the success and the feasibility of the Plan.

**B.    Section 1129(a)(2) – Debtor's Compliance
with the Provisions of the Bankruptcy Code**

98.    The Debtor has complied with all applicable provisions of the Bankruptcy Code, as required by section 1129(a)(2) of the Bankruptcy Code.

99.    Specifically, in connection with the solicitation of votes on the Plan, the Debtor disclosed to the holders of impaired claims adequate information as required by section 1125(a) of the Bankruptcy Code.

100.    Moreover, the Debtor, its respective agents, directors, officers, employees, and professionals, and any other Entities that solicited acceptances of the Plan have acted in good faith within the meaning of section 1125(e) of the Bankruptcy Code and are entitled to the protections afforded thereby.

C.    **Section 1129(a)(3) – Proposal of the Plan is in Good Faith**

101.    The totality of the circumstances surrounding the formulation and proposal of the Plan, including, but not limited to, the uncontroverted affidavits presented at the Confirmation Hearing, evidence that the Plan is the result of extensive arms' length negotiations among the Debtor, the ad hoc ACC, the Lummus FCR, and other parties in interest and was proposed in good faith and not by any means forbidden by law.

102.    The negotiations relating to the Plan following the Third Circuit Opinion which vacated the original CE confirmation order led to significant additional monetary contributions, including, but not limited to, the subordination of approximately $532 million in Intercompany Debt, thereby allowing all claimants, including current and future asbestos claimants to receive payment of the allowed value of their claims pursuant to the Plan and the Lummus TDP.[98]  These additional financial contributions, as well as the other revisions to the Plan, many of which were to Lummus' disadvantage, demonstrate the good faith encompassed in Lummus' proposal of the Plan.

103.    The specific factors leading to Lummus' bankruptcy filing also demonstrate the good faith associated with the Chapter 11 Case and the Lummus Plan.  In the years leading up to the Chapter 11 Case, Lummus faced an increasing asbestos problem.  At the same time, its ultimate corporate parent and source of funding, ABB, was under severe financial distress.  As the pleadings and testimony in this Chapter 11 Case and the CE Bankruptcy Case make clear, without finding a global solution to the asbestos liabilities of CE and Lummus, the viability of ABB's business, and, in turn Lummus' business, was at risk.

104.    The Debtor, ABB, CE, the ad hoc ACC, and the Lummus FCR and their respective Affiliates, officers, directors, stockholders, members, representatives, attorneys,

---

[98] Supra, n.58.

accountants, financial advisors, and agents have reasonably relied on the opinions of counsel, accountants, and other experts or professionals employed by the same in formulating the Plan, soliciting votes in support thereof, and otherwise managing the Debtor's Chapter 11 Case. Such reliance further establishes good faith and the absence of willful misconduct.

105.    The overwhelming acceptance of the Plan and the complete absence of any objections to the Plan also serves to further evidence the Plan's fundamental fairness and good faith embodied by the Bankruptcy Code.

106.    The Plan was proposed with the legitimate and honest purpose of reorganizing the business affairs of the Debtor and maximizing returns to creditors of the Debtor. The terms and conditions of the Plan Documents are fair, equitable, reasonable, non-collusive, and in the best interests of the Debtor's creditors and its Bankruptcy Estate.

**D.    Section 1129(a)(4) – Approval of Certain Payments as Reasonable**

107.    All payments by the Debtor for costs and services to the Bankruptcy Estate in connection with the Debtor's Chapter 11 Case, or in connection with the Plan and incident to the Chapter 11 Case, to representatives, consultants, professionals and others, the approval of which is required under the Bankruptcy Code, either have been previously approved by this Court or remain subject to approval by this Court as reasonable, and were adequately disclosed in the Plan and the Disclosure Statement and exhibits thereto or have been disclosed prior to or at the Confirmation Hearing.

**E.    Section 1129(a)(5) – Disclosure of Identity and Affiliations of Proposed Reorganized Debtor's Management, Proposed TAC Members and Trustee and Proposed Compensation of Insiders is Consistent with the Interests of Creditors and Equity Interests and Public Policy**

108.    The Debtor has duly and properly disclosed the identity and affiliations of the proposed directors and officers of the Reorganized Debtor, the TAC members, the Trustee, and the Lummus FCR, and the identity and compensation of insiders who will be employed by the

Reorganized Debtor or the Lummus Asbestos PI Trust.  The appointment or continuance of the proposed directors, officers, TAC members, Trustee, and Lummus FCR is consistent with the interests of the creditors and holders of Equity Interests and with public policy.

**F.      Section 1129(a)(6) – Approval of Rate Changes**

109.    The Debtor's current business does not involve the establishment of rates over which any regulatory commission has or will have jurisdiction after confirmation of the Plan.

**G.      Section 1129(a)(7) – Best Interests of
Holders of Claims and Equity Interests**

110.    The Liquidation Analysis introduced at the Confirmation Hearing, which concludes that holders of impaired claims against the Debtor who did not accept the Plan would receive in a chapter 7 liquidation less than the value that will be realized by the holders of such Claims and Equity Interests under the Plan, is reasonable and is supported by the evidence in the record of this Chapter 11 Case.

**H.      Section 1129(a)(8) – Acceptance of
the Plan by Each Class Entitled to Vote**

111.    With respect to each impaired class of Claims, Creditors that hold at least two-thirds in amount and more than one-half in number of the Allowed Claims of such class have accepted the Plan.

112.    Furthermore, more than seventy-five percent (75%) of the creditors in Class 5 (Lummus Asbestos PI Trust Claims) have accepted the Plan, thereby satisfying the requirements of section 524(g) of the Bankruptcy Code.

113.    Class 6 Claimants and holders of Equity Interests in Class 7 have unanimously accepted the Plan.

114.    Classes 1, 2, 3, and 4 under the Plan are unimpaired and are deemed to have accepted the Plan.

DOCS_DE:119243.1

**I.**  **Section 1129(a)(9) – Treatment of Priority Claims**

115.    The Plan provides for the treatment of Administrative Expense Claims, Priority

Tax Claims, and Claims entitled to priority pursuant to sections 507(a)(3) – (8) of the

Bankruptcy Code in the manner required by section 1129(a)(9) of the Bankruptcy Code.

**J.**  **Section 1129(a)(10) – Acceptance
of the Plan by Each Impaired Class**

116.    The Plan has been accepted by all classes of impaired Claims that are entitled to

vote, including Classes 5, 6, and 7.

**K.**  **Section 1129(a)(11) – Feasibility of the Plan**

117.    Confirmation of the Plan is not likely to be followed by the liquidation, or the

need for further financial reorganization, of the Reorganized Debtor or the Lummus Asbestos PI

Trust.

**L.**  **Section 1129(a)(12) – Payment of Bankruptcy Fees**

118.    All fees payable under 28 U.S.C. § 1930, if any, have been paid or will be paid on

the Effective Date.  The Debtor will possess Cash necessary to pay any fees payable under

28 U.S.C. § 1930, as determined by this Court at the Confirmation Hearing and the Debtor will

continue to pay all applicable fees until the Chapter 11 Case is closed.

**M.**  **Section 1129(a)(13) – Retiree Benefits**

119.    Section 8.2 of the Plan expressly provides for the assumption of all retiree benefit

plans, policies, and programs.  Thus, the Plan complies with section 1129(a)(13) of the

Bankruptcy Code.

**N.**  **Section 1129(d) – Principal Purpose Not Tax Avoidance**

120.    No party in interest, including, without limitation, any governmental unit or

taxing authority, has requested that this Court deny confirmation of the Plan on grounds that the

DOCS_DE:119243.1

principal purpose of the Plan is the avoidance of taxes or the avoidance of the application of

section 5 of the Securities Act of 1933 and the primary purpose of the Plan is not such

avoidance. Accordingly, the Plan satisfies the requirements of section 1129(d) of the

Bankruptcy Code.

### The Lummus Asbestos PI Trust and the Lummus Asbestos PI Channeling Injunction Comply with the Requirements of Section 524(g) of the Bankruptcy Code

**A.      Section 524(g)(1) – The Lummus Asbestos PI Channeling Injunction Provided for in the Plan Complies with the Notice and Hearing Requirements and Is Otherwise Proper**

121.    In accordance with section 524(g)(1) of the Bankruptcy Code, the Plan provides

that the Lummus Asbestos PI Channeling Injunction will be issued in connection with the

Confirmation Order.

122.    There has been proper notice of the Confirmation Hearing, and the terms of the

Lummus Asbestos PI Channeling Injunction properly enjoin Entities from taking legal action for

the purpose of directly or indirectly collecting, recovering, or receiving payment or recovery

with respect to any Claim or Demand that, under the Plan, is to be paid in whole or in part by the

Lummus Asbestos PI Trust, except as otherwise expressly allowed by the terms of such

injunction, the Confirmation Order, and the Plan, respectively.

123.    Lummus Asbestos PI Trust Claims encompass only claims based on the

operations of the Debtor and only Lummus Asbestos PI Trust Claims are channeled to the

Lummus Asbestos PI Trust pursuant to the Plan.

124.    The substantial contributions to be made in this Chapter 11 Case are sufficient to

justify the issuance of the Lummus Asbestos PI Channeling Injunction in favor of all Asbestos

Protected Parties contemplated by the Plan. As set forth in the ABB and Non-Debtor Affiliate

Settlement Agreement (Lummus), ABB, ABB Holdings, the Debtor, and certain other ABB

Group entities are making these contributions on behalf of themselves and all other Asbestos

Protected Parties. These contributions will allow all allowed claims to be paid the allowed value of the Lummus Asbestos PI Trust Claims, in accordance with the terms, provisions, and procedures of the Lummus TDP.[99]

**B.    Section 524(g)(2) - The Asbestos PI Trust Satisfies
the Structural Requirements of Section 524(g)**

125.    As of the Petition Date, in accordance with section 524(g)(2)(B)(i)(I), the Debtor has been named as a defendant in personal injury, wrongful death, or property damage actions seeking recovery for damages allegedly caused by the presence of, or exposure to, asbestos or asbestos-containing products.

126.    In accordance with section 524(g)(2)(B)(i)(I)-(IV) of the Bankruptcy Code and except as otherwise provided in the Plan, the Lummus Asbestos PI Channeling Injunction is to be implemented in connection with the Lummus Asbestos PI Trust which, pursuant to the Plan:

- Shall assume the liabilities of the Debtor with respect to Lummus Asbestos PI Trust Claims;

- Is to be funded, in part, with a $33 million note and such note is collateralized by a pledge of 51% of the issued and outstanding shares of Capital Stock in Lummus held by ABB Holdings. The Lummus Note is by its terms, an obligation of Lummus to make future payments;

- Will have the right to receive $5 million, representing the Lummus Insurance Recovery Guaranteed Payment;

- Will have rights to convert certain rights under the Plan into ownership of the majority of the voting shares of the Reorganized Debtor upon an event of default under the Lummus Note; and

- Is to use its assets and income to pay Lummus Asbestos PI Trust Claims.

127.    As required by section 524(g)(2)(B)(ii)(I)-(V) and except as otherwise provided in the Plan, the facts and circumstances of the Debtor's Chapter 11 Case include the following:

- The Debtor is likely to be subject to substantial future Demands for payment arising out of the same or similar conduct or events that gave rise

---

[99] Id.

to the Lummus Asbestos PI Trust Claims which are addressed by the Lummus Asbestos PI Channeling Injunction and the Lummus Asbestos Insurance Entity Injunction;

- The actual amounts, numbers, and timing of Demands cannot be determined;

- The pursuit of Demands outside the procedures prescribed by the Plan and the Lummus TDP is likely to threaten the Plan's purpose to deal equitably with Lummus Asbestos PI Trust Claims;

- The terms of the Lummus Asbestos PI Channeling Injunction and the Lummus Asbestos Insurance Entity Injunction, including any provisions barring actions against third parties, are set out in the Plan and described in the Disclosure Statement;

- The Plan establishes, in Class 5, a separate class of claimants whose Claims are to be addressed by the Lummus Asbestos PI Trust;

- The class of claimants whose Claims are to be addressed by the Lummus Asbestos PI Trust has voted, by more than seventy-five percent (75%) of those voting, in favor of the Plan; and

- Pursuant to the Lummus TDP, the Lummus Asbestos PI Trust shall operate through mechanisms such as structured, periodic, or supplemental payments, pro rata distributions, matrices, or periodic review of estimates of the numbers and values of Lummus Asbestos PI Trust Claims or other comparable mechanisms, that provide reasonable assurance that the Lummus Asbestos PI Trust shall value, and be in a financial position to pay, Lummus Asbestos PI Trust Claims that involve similar Lummus Asbestos PI Trust Claims in substantially the same manner.

**C.    Section 524(g)(4) - The Lummus Asbestos PI Channeling Injunction and the Lummus Asbestos Insurance Entity Injunction Shall Be <u>Valid and Enforceable Pursuant to Section 524(g)(4) of the Bankruptcy Code</u>**

128.    In accordance with section 524(g)(4)(A), the Lummus Asbestos PI Channeling Injunction shall be valid and enforceable against all entities that it addresses since the Asbestos Protected Parties and the Settling Lummus Asbestos Insurance Companies are all appropriate third parties eligible for protection pursuant to section 524(g)(4)(A)(ii) of the Bankruptcy Code.

129.    In accordance with section 524(g)(4)(B)(i) of the Bankruptcy Code, the Lummus FCR was appointed by this Court as part of the proceedings leading to the issuance of the Lummus Asbestos PI Channeling Injunction for the purpose of, among other things, protecting

the rights of persons that might subsequently assert Demands of the kind that would constitute Lummus Asbestos PI Trust Claims and are transferred to the Lummus Asbestos PI Trust pursuant to the Lummus Asbestos PI Channeling Injunction.

130.    The Lummus FCR supports the Plan and approves of the treatment provided to holders of Lummus Asbestos PI Trust Claims, including, but not limited to, the issuance of the Lummus Asbestos PI Channeling Injunction and the Lummus Asbestos Insurance Entity Injunction.

131.    In accordance with section 524(g)(4)(B)(ii) of the Bankruptcy Code, in light of the benefits provided, or to be provided, to the Lummus Asbestos PI Trust by or on behalf of each Asbestos Protected Party and Settling Lummus Asbestos Insurance Company, the Lummus Asbestos PI Channeling Injunction and the Lummus Asbestos Insurance Entity Injunction are fair and equitable with respect to persons that might subsequently assert Demands that would constitute Lummus Asbestos PI Trust Claims against any Asbestos Protected Party and Settling Lummus Asbestos Insurance Company.

132.    The Plan otherwise complies with section 524(g) of the Bankruptcy Code.

### Miscellaneous

**A.    Approval of the Settlements, Discharges, Releases and Injunctions Provided Under the Plan**

133.    This Court has the power and authority under section 524(g) of the Bankruptcy Code to enter the injunctions contemplated by the Plan which, among other things, and except as otherwise provided in the Plan, will channel the Lummus Asbestos PI Trust Claims to the Lummus Asbestos PI Trust and limit the direct or indirect prosecution of Lummus Asbestos PI Trust Claims against the Debtor, any or all of the Asbestos Protected Parties and Settling Lummus Asbestos Insurance Companies, and prohibit any Entity from attempting to circumvent the Plan and the orders of this Court.

DOCS_DE:119243.1

134.    The Lummus Asbestos Insurance Entity Injunction is a proper exercise of the foregoing authority of the Court and its entry is warranted by the facts and circumstances of the Debtor's Chapter 11 Case.

135.    Pursuant to section 1123(b) of the Bankruptcy Code and Bankruptcy Rule 9019(a), and based upon the representations and arguments of counsel to the Debtor, ABB Holdings, and the Lummus FCR, as applicable, and all other testimony either actually given or proffered and other evidence introduced at the Confirmation Hearing and the full record of this Chapter 11 Case, the compromises and settlements agreed to by the Debtor during the course of the Chapter 11 Case:

- Reflect a reasonable balance between certainty and the risks and expenses of both future litigation and the continuation or conversion of this Chapter 11 Case;

- Fall well within the range of reasonableness for the resolution of complex litigation;

- Are fair and equitable and in the best interest of the Debtor, its Bankruptcy Estate, Creditors, and other parties in interest;

- Will maximize the value of the Bankruptcy Estate by preserving and protecting the ability of Lummus to continue operating outside of bankruptcy protection and in the ordinary course of business; and

- Are essential to the successful reorganization of the Debtor.

136.    Further, each non-debtor entity that will benefit from the releases, waivers of claims, exculpations, indemnities, and injunctions contained in the Plan either shares an identity of interest with the Debtor, was instrumental to the successful prosecution of the Chapter 11 Case, provided necessary funding to the Debtor, has contributed substantial assets or other benefits to the Debtor's reorganization and/or had substantial contributions made on their behalf which value will allow for distributions that would not otherwise be available but for the contribution made by such non-Debtor parties.  Such releases, waivers, exculpations, indemnities and injunctions are essential to the Debtor's successful reorganization and each of the impacted

37

classes of Claimants and holders of Equity Interests has voted overwhelmingly to accept its proposed treatment under the Plan and are consistent with applicable laws.

137.    All releases, discharges, and injunctions with respect to claims and causes of action against the Asbestos Protected Parties and Settling Lummus Asbestos Insurance Companies set forth in the Plan are inextricably intertwined, are an integral part of the Plan, are fair, equitable, reasonable, and in the best interests of the Debtor and its Bankruptcy Estate, Reorganized Debtor, the Lummus Asbestos PI Trust, and holders of Claims, Equity Interests and Demands (including holders of Lummus Asbestos PI Trust Claims and Demands) and are effective and binding on all Entities who may have had standing to assert such Claims or causes of action.

**B.    Bankruptcy Rule 3016(b)**

138.    The Plan is dated and identifies the name of the submitting entity in accordance with Bankruptcy Rule 3016(b).

**C.    No Successor Liability; Vesting of Assets; Discharge of Liabilities**

139.    The Asbestos Protected Parties, the Reorganized Debtor, or the Lummus Asbestos PI Trust shall not be a successor to the Debtor by reason of any theory of law or equity, and none shall have any successor or transferee liability of any kind or character, except that the Reorganized Debtor and the Lummus Asbestos PI Trust shall assume the obligations specified in this Plan and this Order.

140.    Except as otherwise provided in the Plan, on the Effective Date, title to all of the Debtor's assets and properties and interests in property, other than the ABB Consideration, shall vest in the Reorganized Debtor, free and clear of all Claims, Equity Interests, Encumbrances and other interests, and the Confirmation Order shall be a judicial determination of the discharge of the liabilities of the Debtor.

141.    On the Effective Date, title to the ABB Consideration shall vest in the Lummus Asbestos PI Trust free and clear of all Claims, Equity Interests, Encumbrances, and other interests.

**D.    Conditions to the Effective Date**

142.    The Debtor has stated that it has no reason to believe that all conditions to the Effective Date will not be satisfied or duly waived in accordance with section 7.10 of the Plan, and no party presented any evidence at the Confirmation Hearing suggesting otherwise.

**E.    General**

143.    Due notice of the Confirmation Hearing has been given to all parties in interest.

144.    Due notice of the deadline for filing objections to the adequacy of the Disclosure Statement has been given to all parties-in-interest.

145.    The affidavits and testimony presented by the Debtor at the Confirmation Hearing provided an adequate and competent basis for the facts and opinions contained therein, and were credible.  No parties in interest objected to the affidavits presented by the Debtor at the Confirmation Hearing, requested cross-examination of the witnesses, or offered contradictory evidence and, therefore, the affidavits are accepted as testimony in lieu of live witnesses.

146.    Each of the conditions precedent to the entry of the Confirmation Order, as set forth in section 7.9 of the Plan, has been satisfied or waived.

**F.    Exemptions from Securities Laws**

147.    Pursuant to section 1125(d) of the Bankruptcy Code, the Debtor's transmittal of the Plan Solicitation Packages, its solicitation of acceptances of the Plan, and the issuance and distribution of any securities pursuant to the Plan, and the Reorganized Debtor's participation in such activities, are not and will not be governed by or subject to any otherwise applicable law,

rule, or regulation governing the solicitation of acceptance or rejection of a plan of reorganization or the offer, issuance, sale, or purchase of securities.

148.    Pursuant to section 1145(a)(1) of the Bankruptcy Code, the offering, issuance and distribution pursuant to the Plan of Reorganized Debtor of any distributions that may be deemed to be securities shall be exempt from section 5 of the Securities Act of 1933, as amended, and from any state or local law requiring registration, notification, qualification or exemption prior to the offering, issuance, distribution, or sale of securities.

**G.    Exemptions from Taxation**

149.    Pursuant to section 1146(c), the issuance, transfer or exchange of any security contemplated by the Plan, or the making or delivery of an instrument of transfer under the Plan, may not be taxed under any law imposing a stamp tax or similar tax.

It is SO ORDERED, ADJUDGED AND DECREED on **June 29**  , 2006.

Judith K. Fitzgerald
United States Bankruptcy Judge

rmab